10738

ATLANTA & C. A. L. RY. CO. *ET AL* v. CITY OF EASLEY *ET AL*

(109 S. E. 285)

1. DEDICATION.—RAILROADS.—RAILROAD PERMITTING RIGHT OF WAY TO BE USED AS STREET ESTOPPED FROM CLAIMING EASEMENT.—A railroad, having permitted its right of way to be used by the public as a street, and to be kept in repair as such by city authorities, for over 30 years, and having permitted storehouses and other buildngs to be constructed thereon, was estopped from claiming an easement thereon precluding assessment of abutting property for street improvements, having thereby abandoned easement and dedicated street to use of public.

2. EMINENT DOMAIN—RAILROAD ACQUIRES MERE EASEMENT IN HIGHWAY FOR ROADBED.—Under Civil Code 1912, § 330, railroad constructing track along a public highway acquires easement merely in that portion necessary for its roadbed.

3. MUNICIPAL CORPORATIONS.—RAILROAD PROPERTY ABUTTING ON STREET NOT EXEMPT FROM ASSESSMENT FOR STREET IMPROVEMENTS.—Railroad property abutting on street is not exempt from assessment for street improvements under Const. Art. 10, § 18, notwithstanding use of such property for railroad purposes.

4. EVIDENCE.—JUDICIAL NOTICE TAKEN OF BENEFIT TO RAILROADS FROM GOOD STREETS.—In action involving validity of assessment of railroad porperty for street improvements, the Court knows that good roads and good streets are a great factor in human happiness, as well as a great benefit to the territory in which they are, and that good streets facilitate transportation and benefit the business of the railroad.

5. CONSTITUTIONAL LAW.—MUNICIPAL CORPORATIONS.—ASSESSMENT OF RAILROAD PROPERTY BY FRONT FOOT RULE WITHOUT HEARING NOT TAKING OF PROPERTY WITHOUT DUE PROCESS OF LAW.—Assessment of railroad property abutting on street for street improvements upon the basis of feet frontage, without giving the railroad company an opportunity to be heard, does not constitute the taking of property without due process of law in violation of the Constitution.

6. MUNICIPAL CORPORATION—DEFECT IN STREET IMPROVEMENT ORDINANCE FOR WANT OF LEGISLATIVE AUTHORITY CURED BY SUBSEQUENT ENACTMENT OF STATUTE.—Assessment under street improvement ordinance unauthorized at time of enactment, but ratified by Act Feb. 21, 1919, (31 St. at Large, p. 585), *held* valid, the defect for want of prior legislation being cured by subsequent enactment of statute.

Before DeVore, J., Pickens, September, 1920. Reversed.

Action by Atlanta & Charlotte Air Line Railway Company et al. against the City of Easley et al. Judgment for plaintiffs and the defendants appeal.

Following is the decree of the Court below:

This is an action to enjoin the collection of assessments for street improvement in the city of Easley, S. C., levied against the property of the plaintiffs, Atlanta & Charlotte Air Line Railway Company and its lessee, Southern Railway Company. When the action was filed the Director General of Railroads was in possession and control of said railroads, and was made a party plaintiff. But the said railroads have been turned back to their owners and the Director General has no further interest in this suit. The real contest is between the plaintiffs, Atlanta & Charlotte Air Line Railway Company and Southern Railway Company, which will be for convenience hereinafter called the plaintiffs, and the city of Easley, which will be called the defendant. The validity of the assessments is attacked on several grounds. The first contention of the plaintiffs is that said assessments were levied without authority, were

unconstitutional when levied and that the curative or validating act of the Legislature passed thereafter could not and did not render them valid and binding, but that they are null and void, and cannot be enforced. The facts out of which this contention arises are as follows:

The General Assembly, at the session of 1917, passed an Act ratifying a constitutional amendment to Article 10 of the Constitution of the State, which provided that "The General Assembly may authorize the town of Clinton and the City of Easley to levy an assessment upon abutting property to pay for permanent improvements on streets and sidewalks immediately abutting said property." Act 1917, p. 226. Without any Act being passed authorizing such levy, the City of Easley, on December 16, 1917, and thereafter, passed ordinances providing for the levy of said assessments and the collection thereof, and all proceedings relating thereto. The plaintiffs refused to pay the assessments levied against their right of way on the ground that said assessments were unauthorized and illegal and void. By an Act of the General Assembly, approved February 21, 1919, an attempt was made to validate, ratify, and confirm all acts and proceedings had and taken by the City of Easley in levying assessments on abutting property. Acts 1919, p. 585. By an Act of the Legislature, approved March 10, 1919, the City of Easley was authorized to levy such assessments as the constitutional amendment provided for. Acts 1919, p. 84. I do not see that the last named Act has anything to do with the questions involved, as it was passed long after the assessments were levied and after the validating act was passed. So that the real question here is: Did the ratifying act have the effect of validating the assessments? I do not think it did.

It was held in the case of *Mauldin v. City Council of Greenville*, 53 S. C. 285; 31 S. E., 252; 43 L. R. A., 101; 69 Am. St. Rep., 855, that such local assessments were un-

constitutional and void.  This was the law at the time the assessments in question were levied, and consequently when the City of Easley passed its ordinances for the levy and collection of the same, such ordinances were unconstitutional and void.  Does the amendment change the situation?  It required legislative authority as a condition precedent to levying said assessments.  It was not self-executing, but simply provided that the General Assembly may authorize said assessments.  Until such authority was given, the City of Easley was without power, authority, or jurisdiction to pass any ordinance on the subject.  Such ordinances were mere nullities.  The plaintiffs had the right to regard them as absolutely void, and to ratify them as sought by the City of Easley would be such taking of property as would be a lack of due process of law.  In no case can the Legislature authorize the violation of the Constitution or validate an unconstitutional act.  *State v. Whitesides,* 30 S. C., 579; 9 S. E., 661; 3 L. R. A., 777; *Hode v. School District,* 80 S. C., 518; 61 S. E., 1009. Curative acts can remedy irregularities in judicial proceedings, but cannot cure void proceedings.  Black, Constitutional Prohibitions, 208, 209.  The Legislature may cure judicial acts which are void through irregularity in procedure.  But where the Court in which the proceedings were had possessed no jurisdiction, its acts cannot be validated.  12 *Corpus Juris,* 1093.  I think the true rule on this subject is stated by the Supreme Court of this State in the case of *Dove v. Kirkland,* 92 S. C., 321; 75 S. E., 503, quoting from Cooley on Con. Lim. as follows:

"A retrospective statute, curing defects in legal proceedings, where they are in their nature irregularities only, and do not extend to matters of jurisdiction, is not void on unconstitutional grounds, unless expressly forbidden.  Of this class are the statutes to cure irregularities, in the assessment. of property for taxation, and the levy of taxes

33—S. C. 117

thereon; irregularities in the votes or other action by municipal corporations, or the like, where a statutory power has failed of due and regular execution, through the carelessness of officers or other cause, irregular proceedings in courts, etc. The rule applicable to cases of this description is substantially the following: If the thing wanting, or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the Legislature might have dispensed with, by prior statute, then it is not beyond the power of the Legislature to dispense with it by subsequent statute. And if the irregularity consist in doing some act, it is equally competent to make the same immaterial by a subsequent law."

I think the foregoing is the correct rule upon the subject rather than the position taken by the defendant that the Legislature can validate any act which it might originally have authorized. This rule is subject to the limitation that there must have been in effect at the time the acts were performed some valid law authorizing the proceedings and conferring jurisdiction to act. In this case it is certain that, at the time the defendant passed its ordinances levying the assessments and attempting to create liens on the property of the plaintiffs it was without even the color of juris-diction or power to act. The plaintiffs and all other persons had the right to treat such proceedings as absolutely void. The Legislature had not authorized these proceedings, and might never do so. The plaintiffs were not bound to assume that an attempt to validate them would ever be made. To give the ratifying act the effect of validating these assessments, no opportunity whatever being furnished the plaintiffs to contest them, would be depriving the plaintiffs of property without due process of law, which is inhibited by the Constitution of the United States and of the State of South Carolina. This would render the validating act itself unconstitutional. So that, even if the rule con-

tended for by the defendant was the correct one, these assessments are invalid. The Legislature could not have originally authorized them without furnishing opportunities to be heard, for this would have been taking property without due process, and therefore the validating act, which attempts to do this, cannot have the effect of rendering these assessments valid. On this branch of the case my conclusion is that the assessments in question are illegal and void, for the two reasons that when they were levied the City of Easley was without even the color of jurisdiction or authority to do so, and to give the ratifying act the effect of validating them would be depriving the plaintiffs of property without due process of law, which can never be done by a curative or validating statute.

The next question for consideration is: What title have the plaintiffs to their right of way through the City of Easley and the extent thereof? In the year 1871 Benjamin Mauldin conveyed to the Atlanta & Richmond Air Line Railway Company, the predecessor in title of the plaintiffs, 100 feet on each side of the track or roadway, measuring from the center, for railroad purposes, in fee simple. This deed was recorded as required by law in the proper office on August 14, 1872, in Book B, p. 38. This right of way was over and through a certain tract of land which was conveyed to the said Benjamin Mauldin by William Couch on August 16, 1866, and the deed for which was recorded in the office of the Register of Mesne Conveyance for Pickens County on January 28, 1867, in Book L-1, p. 39. The same tract of land was conveyed in the form of a fee simple deed to the said William Couch by Mahala Mansell on October 29, 1859, and the deed for which was duly recorded in the proper office on the 16th day of January, 1860, in Book I-1, p. 224. In the month of May, 1854, Joshua Mansell, the owner of this land, departed this life leaving a last will and testament, dated March 6, 1854,

which was duly admitted to probate.    Mahala Mansell died intestate in the year 1874.    On May 25, 1875, Baylis W. Mansell, a son of Joshua Mansell, and the other heirs at law, filed an action in the Court of Common Pleas for Pickens County against James Boswell and others, claiming that the heirs at law of Joshua Mansell were entitled to the 100 acres of land mentioned in the will of Joshua Mansell, and prayed that the title to said land might be cleared and quieted.

After certain proceedings in said case, on July 5, 1876, Baylis W. Mansell, acting for himself and as attorney for his co-plaintiffs, of the first part, and R. E. Bowen, H. C. Briggs, and Thos. W. Russell, acting for themselves and for the other defendants, except the defendant Atlanta & Richmond Air Line Railway Company, of the second part, entered into an agreement by the terms of which the title to said land was to be executed under order of the Court to the parties of the second part, as agents or trustees of the defendants they represented.    These proceedings were never recorded and seem to have been lost, except an order of the Court dated July 15, 1876, which is recorded in the common pleas journal for the year 1876, page 750.    The facts as to this case above stated are taken from the recitals in this order, and the deed made thereunder.    This deed was made by J. J. Lewis, Clerk of the Court, to R. E. Bowen, H. C. Briggs, and T. W. Russell, trustees, on the 15th day of January, 1876, and recorded in the office of Register of Mesne Conveyance for Pickens County in Volume C-2, p. 372, on the 6th day of March, 1876.    The order above referred to confirms said agreement and directs that the clerk make a deed in accordance with the terms thereof.    In this order it is stated that the defendant, Atlanta & Richmond Air Line Railway Company, is excepted.    The deed provides for the sale of the 100 acres of land willed to Mahala Mansell by Joshua Mansell.    Under

this order and deed the said trustees cut up said lands into lots and sold the same to different parties. Many of the deeds made by the trustees were introduced as evidence. They show that the lots were laid off fronting the right of way and describing the lots as bounding on the right of way of the railroad company. The railroad was constructed in the years 1872 and 1873 through this land, and has been continuously used ever since. The plaintiffs claim that they own as their right of way 100 feet on each side of the track. The defendant claims that they own their roadbed which they have been in the actual use of. It insists that, under the will of Joshua Mansell, Mahala Mansell took only a life estate, and that therefore the plaintiffs took only an estate for the life of Mahala Mansell in the said 100 feet, but have acquired by adverse possession its actual roadbed and the lands on which the depots stand. Which of these contentions is correct? I have reached the conclusion that the plaintiffs own as their right of way over the land in question 100 feet on each side of the track or roadbed measuring from the center. I have reached this conclusion for three reasons:

(1) The testimony shows that the plaintiffs and their predecessors have been in open and adverse possession of the main track, side tracks, and depots on said right of way ever since the construction of the road in 1872 and 1873, claiming under color of title, duly recorded, the full 100 feet on each side of the track. It is a well-established principle that adverse possession of a part or parcel of land claimed under color of title extends to the whole boundary described in the color of title. In addition to this the plaintiffs had the general use of the entire parcel which was open and being used by the public, but not in a way which was inconsistent with the right of the railroad to use the entire strip of land for railroad purposes when it decided to do so.

(2)   The will of Joshua Mansell is not very clear as to whether the Mansell children stood as remaindermen thereunder, but, conceding that they did take as remaindermen, and that the widow, Mahala Mansell, took only a life estate in the 100 acres of land described in said will, such remaindermen, after the death of the life tenant, could not disturb the right of way which the railroad company obtained through and under the life tenant. Their only right would be to recover compensation after the death of the life tenant. There are a number of decisions in this State which hold that the word "owner," as used in statutes authorizing condemnation for railroad purposes, does not necessarily mean the owner of the legal title, but refers to parties in possession. This doctrine is fully set out in the case of *Cayce Land Co. v. Southern Railway Co.,* 111 S. C., 115; 96 S. E., 725. The same doctrine has been held to be true where a trustee gives the right to the railroad company to build its line through property held as trustee. See the case of *Tutt v. Railway Co.,* 28 S. C., 388; 5 S. E. 831. This latter case sustains the contention of the railroad company to its right of way through the church property given by the trustees of said property by deed.

(3)   After the death of Mahala Mansell the children of Joshua Mansell filed an action in the Court and confirmed an agreement by the terms of which the 100 acres of land devised to Mahala Mansell for life was under order of Court deeded to trustees to sell said lands and distribute the proceeds. The railroad company was not a party to this agreement, and it was excepted from the order. These trustees cut up the said 100 acres of land into a large number of town lots which bordered on the right of way of 200 feet as it now is and has been ever since the right of way was acquired. The deeds made to different parties by the trustees in many instances describe the lots as bounded by or fronting on the railroad right of way. I think by this

agreement, order of Court, and the laying out of the lots bordering on the right of way and the deeds of the trustees, the Mansell children and all persons claiming under them are estopped from claiming that the right of way of the plaintiffs is less than 100 feet on each side of the track. Especially is this true after the lapse of so many years.

It is claimed by the City of Easley that it acquired the 200 feet in question for streets by its long use thereof against the Mansell heirs, except the part actually used by the railroad for its roadbed and depot. The railroad was in possession and claiming this 200 feet three years before the City of Easley existed. It was incorporated March 17, 1874. Acts 1874, p. 706. It has therefore at all times had notice that the plaintiffs claimed this 200 feet under the deed from Benjamin Mauldin, and of the facts hereinbefore recited as to the proceedings taken by the heirs at law c. Joshua Mansell, and the acts and deeds of the trustees appointed by the Court. *Beck v. Railway Co.*, 105 S. C., p. 319; 89 S. E., 1081. In addition to this, under the decisions of the Supreme Court of this State, neither a town or the public can acquire by prescription the right to use as a street the right of way of a railroad company. *Blume v. Southern Ry.*, 85 S. C., 440; 67 S. E., 546. A right of way of a railroad, having been acquired for a public purpose, cannot be lost by prescriptive use or adverse possession unless by the erection of a permanent structure, accompanied by notice to the railroad company of an intention to claim adversely to its right. *Atlanta & Charlotte Air Line Ry. Co. v. Limestone & Co.*, 109 S. C., 444; 96 S. E., 188. Taking Joshua Mansell as the common source, my conclusion is that the plaintiffs own as a right of way for railroad purposes 100 feet on each side of the track, measuring from the center thereof through the tract of land described in the deed made by Benjamin Mauldin. If this be true, then the pavements in question are laid down upon

the said right of way. The constitutional amendment provides for permanent improvements, and if the railroad company has the right to use for railroad purposes the whole of this 200 feet as established by the foregoing cases, then the improvements could be destroyed., I do not think the amendment contemplates levying assessments against the right of way of a railroad company where such improvements are laid down on the right of way. Nor do I think the right of way such abutting property as the amendment contemplates where there is no legally established street, and a portion of the right of way is paved, and the remaining part thereof charged with assessments as abutting property.

The foregoing are my conclusions as to the right of way which was obtained from Benjamin Mauldin. This covers most of the paved district, but there is a small part of the same where the title to the right of way was acquired in a different way. Joshua Mansell and Mahala Mansell, on August 9, 1848, conveyed by deed duly recorded to John Gilstrap, Benjamin Mauldin, Bradwell Day, W. S. Birge, and Thomas Montgomery 5 1-4 acres of land as trustees of the Methodist Episcopal Church. The conveyance was in trust to build' a house of worship on said land for use of the members of the Methodist Episcopal Church, South, according to the rules and discipline which may from time to time be agreed upon and adopted by the ministers and preachers of said church and their General Conference. On March 11, 1878, by deed duly recorded, the trustees of said Methodist church conveyed to the plaintiff, Atlanta & Charlotte Air Line Railway Company, and its successors and assigns, a strip of 25 feet, beginning at a certain point in the center of the right of way, in width, by 640 feet in length, on the northern side of the railroad track, and 100 feet by 640 feet on the southern side of the railroad track. There is no pavement on the 25 feet,

but they are laid on about 40 feet on the southern part of
the 100 feet, for which, a part of the assessments in ques-
tion, charge is made.   I think the plaintiffs have good title
to these two strips of land.   The deed is in fee and the
possession of the plaintiffs has been of the same character
as their possession of the 200 feet claimed under the deed
from Benjamin Mauldin, and most of what I have said
in discussing plaintiff's title to that 200 feet is applicable
here.   Besides, I do not see how the defendant can ques-
tion this title.   No one can do so except the Methodist
church, which has   never   objected.   Besides,   from   the
long adverse possession of the plaintiffs and acquiescence
of the said Church, it will be presumed that the trustees
making the deed were authorized to do so by the proper
authority.

The idea cannot be entertained that men of high char-
acter as trustees of a Christian church would make a deed
without authority, especially when the valuable considera-
tion of $350 is stated in the deed.   By this deed, by ad-
verse possession and the statute of limitations, I think plain-
tiffs have acquired title to these two strips of land, and all
I have said hereinbefore as to the pavement on the right
of way of the plaintiffs for the 200 feet acquired through
Benjamin Mauldin is applicable, and need not be repeated.
If the plaintiffs had only their roadbed, as contended by the
defendant, I do not think these assessments could be sus-
tained.   I do not think the constitutional amendment con-
templates a mere easement of this kind, and such roadbed
would not abut upon the pavement, there being an inter-
vening strip of land of from 15 to 30 feet in width between
the roadbed and the pavement.   I do not see any merit
in the contention of the defendant that there was an old
public road 15 or 20 feet wide which extended along the
southern side of the strips of land conveyed to the plain-
tiffs or their predecessors.   This could not prevent the said

railroad from acquiring the right of way described in their deeds. Two easements over the same property may exist; the owner of each would have to so use it as not to destroy the easement of the other.

The next question I shall consider is: Can assessments of the kind in question be levied on a right of way of a railroad company? On this question the authorities differ. I doubt if the amendment to the Constitution under consideration contemplates levying assessments against such property. But if it does, I am satisfied a railway roadbed or right of way is not subject to such assessments unless benefitted thereby. The rule is so stated in 25 Ruling Case Law, p. 117, where the authorities are collected. This benefit must be actual and real, and not conjectural. In the case of *New York R. R. Co. v. Port Chester,* 149 App. Div. 893; 144 N. Y. Supp. 883, affirmed in 210 N. Y. 600; 104 N. E., 1135, the New York Court, in considering this question, said: "It is difficult to see how such property can be benefited by the improvement of a village street passing under it. The only benefit that the learned corporation counsel specifically claims will inure to the railroad company from these improvements is an increase in its business following the increase in business and population resulting to the village from the improvement of its streets. This alleged benefit is too conjectural, fanciful, and remote for consideration."

The authorities on this subject are collected in Ann. Cas. 1916E, p. 581, and 3 Ann. Cas. p. 11. In a note to the last named case the writer reviews the federal decisions upon this subject, and says they establish these important principles: "That State laws providing for assessing the cost of street improvements upon abutting property, which in practical operation do confiscate property, are obnoxious to the Fourteenth Amendment to the Constitution of the United States, and for that reason it is the duty of the

Courts to declare them to be void; that special assessments to pay for local improvements of public streets and highways do, in practical effect, deprive owners of their property without due process of law, unless the property subject to assessment is benefited by the improvement correspondingly to the amount of the assessment; that owners of property have the right to appeal to the Courts for judicial protection against the unconstitutional invasion of their rights by municipal governments in enforcing State laws or local regulations for the collection of assessments which are in excess of the benefits to the property assessed, accruing or to accrue by reason of the improvements to be paid for by such assessments." In this State the doctrine that local assessments of this kind benefit abutting property is repudiated. *Mauldin v. City Council of Greenville,* 42 S. C., 293; 20 S. E., 842; 27 L. R. A., 284; 46 Am. St. Rep. 723. I do not think the testimony in this case shows benefits to the plaintiffs' right of way as justifies the levying of these assessments. The plaintiff's testimony is to the effect that there was no benefit, and the testimony of the defendant relates to general and speculative benefits. Besides, it appears from the testimony that the strip of land claimed as a right of way was, up to 1917, one wide space of 200 feet with the railroad tracks in the center thereof. But in the year 1917 the city renamed its streets and denominated that portion of the 200 feet on the south side of the railroad track South Main Street, and that portion on the north side of said track North Main Street. The assessments in question are levied against the right of way on both sides of the track, which does not touch the pavement on either side of the track, while the business houses and private property abut on the paved area. Such a method of assessment, I think, is discriminatory and inequitable, and amounts to a taking of property

which is contrary to both the State and Federal Constitutions, and renders the assessments void.

The only remaining point in the case is the contention of the defendant that the plaintiffs are estopped to question the validity of these assessments. It claims that, when the double tracking of the main line was about to begin through the City of Easley in 1916, the Southern Railway Company applied to the City of Easley for permission to do the work, and to widen South Main Street; that plaintiffs did not object to the assessments when notice thereof was given under the ordinances to the depot agent and superintendent. I do not think this position can be sustained. The permission asked was done in the interest of the safety of the public during the construction work, and in no sense involved the question of plaintiff's title. The public was using the right of way as a street, and could use it only in such a way as was not inconsistent with its use by the railroad company. In the next place, when the notices in question were served, the Director General of Railroads of the United States was in possession and control of the railroads and persons upon whom these notices were served were the agents of the Director General, and not of plaintiffs. In the next place, the assessments being void for want of jurisdiction or authority to levy them, there is no estoppel here. Ann. Cas. 1915B, note, p. 753; 38 L. R. A. (N. S.) 584; *O'Brien v. Wheelock,* 184 U. S., 450; 22 Sup. Ct., 354; 46 L. Ed., 636.

I have endeavored to pass upon all the questions arising in this action, and have reached the conclusion that the assessments in question are invalid for the reasons hereinbefore given. It is therefore ordered, adjudged, and decreed that the assessments levied against the property of the plaintiffs described in the complaint are null and void, and that the plaintiffs are not liable for the same.

It is further ordered, adjudged, and decreed that the temporary injunction heretofore granted in this action be made perpetual, and that the defendants, their agents and servants be, and they are hereby, enjoined from collecting or attempting to collect the said assessments by sale of the property heretofore levied upon by them or otherwise.

Let all the record used before me at the hearing be filed with this decree.

*Messrs. J. J. McSwain, A. P. DuBose* and *Haynesworth & Haynesworth,* for appellants, cite: *Levy of paving assessments authorized:* 29 Stat. 250; 30 Stat. 226; 31 Stat. 585. *Easement may be lost by abandonment:* 89 S. C., 395; 87 S. C., 74. *Evidence shows abandonment:* 93 S. C., 397; 89 S. C., 391. *Company presumed to know its title:* 67 S. C., 452. *Encouraged use by others:* 246 Fed. 386. *Right of way subject to paving assessment:* 12 L. R. A. (N. S.) 112; 12 L. R. A. (N. S.) 121; 197 U. S., 430; 170 Pac., 216; 10 A L. R., 157; 144 S. W., 1086; 59 S. W., 248; 39 N. E., 1077; 46 N. E., 629; 48 Pac., 877; 49 N. E., 375; 45 N. E., 575; 46 N. E., 597; 77 N. E., 741; 47 Pac., 237. *Railroad is benefited by paving:* 251 U. S., 182. *Not exempt even when exempt from taxation:* 147 U. S., 190; 25 R. C. L., 117; 25 A. & E. Enc. L. 1187-8; 28 Cyc., 119; L. R. A., 1915-A, 129; 76 S. W., 1097. *Assessment by the front foot is valid where none other is prescribed:* 34 Pac., 969; 91 Pac., 470; 51 N. W., 566; 76 N. Y. Supp., 49; 3 Mackey, 142; 47 Iowa, 222; 14 N .W., 78; 80 Mo., 379; 113 Ill., 65; 114 Ill., 217; 58 L. R. A., 372; 5 Am. St. Rep., 637; 70 Ga., 817; 125 N. W., 392; 40 N. E., 28; 78 Ky., 357; 28 L. R. A. (N. S.) 1161; 52 L. R. A. (N. S.) 287; 161 S. W., 1118; L. R. A. (N S.) 1917-D, 372; 99 S. E., 188; 181 U. S., 389; 181 U. S., 394; 125 U. S., 345; 147 U. S., 190; 167 U. S., 589; 239 U. S., 207; 250 U. S., 454. *Legislature can validate any act*

*which it might originally have authorized*: 9 Cyc., 1024; 25 A. & E. Enc. L., 1169, 1228; 12 C. J., 1096; 25 R. C. L., 94; 21 S. C., 414; 80 S. C., 518; 30 S. C., 579; 30 S. C., 587: 92 S. C., 313. *Legislature may validate a town ordinance which was originally void*: 28 Cyc., 376; 1 N. & McC., 227; 14 Am. St. Rep., 308; 25 R. C. L., 795; 21 S. C., 414. *Legislature may retrospectively impose an assessment for improvements already made*: 235 U. S., 207; 245 U. S., 288; 248 U. S., 500; 239 U. S., 254; 41 Vt., 590; 29 Wis., 400; 177 Mass., 434. *Otherwise it would be hard to justify reassessments*: 172 U. S., 269; 122 U. S., 154; 43 Pac., 364; 43 Pac., 367; 47 Pac., 1102; Cooley Tax'n. (3rd Ed.) 1280; 64 Pac., 791; 62 Pac., 444.

*Messrs. S. R. Prince, Carey & Carey* and *Frank G. Tompkins,* for respondents, cite: *Assessments for local benefits unconstitutional prior to* 1917: 53 S. C., 285; 25 R. C. L., 101. *Curative statutes are only effective where a statutory power has failed of due and regular execution*: 92 S. C., 321; 80 S. C., 518. *But cannot validate an unconstitutional act*: 30 S. C., 586; 21 S. C., 414; 54 S. C., 457. *Ordinance beyond powers of municipality cannot be validated*: 28 Cyc., 377; 76 Am. Dec., 529; Cooley Con. Lim. (7th Ed.) 528; McQuillan Mun. Corp., Sec. 707; Dillon Mun. Corp. (5th Ed.) Sec. 127; Wade Retroac. Laws, Sec. 266-9; Black Con. Law, Chap. 22. *Office of proviso in statute*: 15 Peters, 423; 25 R. C. L., 894; 10 Wheat, 1; 10 Peters, 449. *Legislature presumed to know the law*: 109 S. C., 301. *Only remedy to remaindermen after life tenant has conveyed right of way is for compensation*: 111 S. C., 115. *Railroad chartered and in possession of right of way before Easley existed*: Acts 1874, p. 706. *Easley had full notice of* 200 *foot right of way claimed*: 105 S. C., 319. *Town cannot acquire by prescription right to use right of way as a street*: 85 S. C., 440;

109 S. C., 444. *Trustees had same right as life tenant to make deed*: 28 S. C., 388. *Railroad shall not obstruct highway*: 111 S. C., 140. *Right to assess right of way for paving must be based on benefit to railroad*: 25 R. C. L., 117, 138. *Not by front foot*: 71 Am. St. Rep., 884; 68 Am. St. Rep., 714; 70 Am. St. Rep., 306; 25 R. C. L., 147. *If benefit is in proportion to assessment it will be sustained even if made by the front foot*: 172 U. S., 303; 181 U. S., 399; 181 U. S., 394; 181 U. S., 389; 181 U.S., 404; 181 U. S., 33; 181 U. S., 371. *Agents of government not agents of railroads*: 114 S. C., 139; 113 S. C., 181. *Estoppel by conduct*: 97 S. C., 116; 13 S. C., 370; 25 R. C. L., 181; Ann. Cas. 1915B, 753; 107 S. C., 39; 111 S. C., 57; 82 S. C., 36; 85 S. C., 134; 65 S. C., 267. *Adverse possession of right of way*: 67 S. C., 499; 85 S. C., 440; 109 S. C., 44.

October 10, 1921.

The opinion of the Court was delivered by Mr. Justice Watts.

·This is an action seeking to restrain the· City of Easley from collecting from the railway company certain assessments against abutting property for street improvements. The case was tried by Judge DeVore, who filed a decree in favor of plaintiffs' respondents, on January 10, 1920. Appellants appeal, and by exceptions, 20 in number, seek reversal.

The decree of Judge DeVore should be set out in the report of the case. The exceptions challenge the finding of his Honor in favor of the railroad's contention:

"(1)  That the land occupied by North Main Street is merely a part of the railroad right of way; that, not being a part of the streets of the city, it does not come within the constitutional amendment authorizing the city council to levy an assessment for its improvement against abutting

property.   (2)   That the right to charge part of the costs of improving a street against abutting property does not apply to the property of a railroad company, consisting of right of way, tracks, station grounds, etc.   (3)   That an assessment upon the basis of feet frontage and without giving the railway company an opportunity to be heard is a taking of property without due process, and unconstitutional.   (4)   That, at the time of the passage of the ordinance authorizing the improvement of the streets and the levy of the assessment, no statute had been passed authorizing the city council of Easley to levy such assessments, and that the statute of February 21, 1919, purporting to ratify the action of the city council was inoperative."

As to the finding of his Honor that the land occupied by North Main Street and South Main Street, respectively, is a part of the right of way of the railway company, and that, not being streets, the city council was without power to levy an assessment for their improvement.

The proof clearly shows that, since the City of Easley has been incorporated for a period over 30 years, the streets have been there used by the public at large, worked by the city, and before the railroad was built one of the streets was a public highway; while it is true the right of way of railroad was originally 100 feet, yet these streets have been used by the public for over 30 years, storehouses and other houses have been built, and a use put to the right of way now claimed by the railway, inconsistent with their claim.

The railroad has stood by, never claimed "their pound of flesh" until now, and their easement on these streets, under all the evidence in the case, unquestionably has been lost and abandoned by them under the principles laid down by this Court under the cases of *Lorick v. Railway Co.*, 87 S. C., 74; 68 S. E., 931; *Southern Railway Co. v. Howell*, 89 S. C., 395; 71 S. E., 972;

Ann. Cas. 1913A, 1070; *Railway Co. v. Manufacturing Co.,* 93 S. C., 397; 76 S. E., 1091. The evidence shows that that portion used by the City of Easley and the public at large has been abandoned and lost by estoppel on the part of railroad, and that the easement acquired to these streets by the public at large is superior to the easement of the railroad. That part which was formerly a highway being there first, the railroad never did acquire an easement in it, other than what was necessary for its roadbed. Code Laws 1912, § 3300. The evidence does not warrant any other inference than that the City of Easley and the public at large have acquired by adverse possession for a statutory period and longer a right that defeats the title of the railroad company to these streets under their original claim of the easement. *Matthews v. Railroad,* 67 S. C., 506; 46 S. E., 335; 65 L. R. A., 286.

The evidence submitted in this case shows that for over 40 years the streets in controversy have been recognized and used in the town and by the public generally, and that the railroad company during all of that time has not questioned such use; has not complained or asserted its rights. During all of that time the public in general have uninterruptedly used these streets for the purpose of travel, continuous, uninterrupted, adverse, notorious, during all that time worked and kept in repair by the proper authorities. During all the time, 40 years, the streets have been used by the public generally, and the railroad has had knowledge of such use and acquiesced therein, has stood by and allowed storehouses and other buildings • erected abutting these streets, and the business of the town has been built up, it is fair to assume, on the assumption that the streets were dedicated to the use of the public. To affirm his Honor's decree would be destructive of the property rights of individuals, and destructive of the rights of the public. The claim of railroads to these streets comes too late.

*Southern Railway Co. v. Board of Commissioners of Union, S. C.,* 246 Fed., 386; 158 C. C. A., 447.

As to the right to charge part of the costs of improving a street, it applies to abutting property of a railroad company used for its track, station, grounds, etc. The amendment to the Constitution, Section 18, Art. 10, declares the General Assembly may authorize the City of Easley to levy assessment upon abutting property holders to pay for streets immediately abutting such property, etc., provided certain conditions are complied with. The amendment authorized the assessment against abutting property. The railroad property occupied by its tracks and stations does abut upon both streets. The railroad contends that it does not come within the constitutional amendment, because of the use to which it is put. This position is untenable. The railroad is entitled to no immunity other than any other owner of property abutting the streets. It does not make any difference as to what use the property is put; they are owners and users of the property if it abuts the streets, and there is nothing in the constitutional amendment making the exemption as to them.

The public has a right to a street to get to the stations of the railroad, and it would be unjust and unfair to make other abutting owners of property pay, and exempt the railroad. The railroad is not exempt from this assessment. *Heman Construction Co. v. Wabash Railway Co.,* 206 Mo., 172; 104 S. W., 67; 12 L. R. A. (N. S.) 112, and authorities therein cited; *Northern Pacific Railroad Co. v. Seattle,* 46 Wash., 674; 9-1 Pac., 244; 12 L. R. A. (N. S.) 121; 123 Am. St. Rep., 955. In *L. and N. R. R. v. Barber Asphalt Co.,* 197 U. S., 430, 435; 25 Sup. Ct., 466; 49 L. Ed., 819, it was held that an assessment for local improvements levied against property used for railroad purposes was valid. The Court said:

"That, apart from specific use to which this land is devoted, land in a good sized city generally will get benefit from having the streets about it paved, and that this benefit generally will be more than the cost, are propositions whih, as we already have implied, the Legislature is warranted in adopting."

The Court further said:

"That the Legislature is warranted in going one step further and saying that on the question of benefit or no benefit the land shall be considered in its general relations and apart from its particular use."

In *Branson v. Bush*, 251 U. S., 182, 189; 40 Sup. Ct., 113, 116 (64 L. Ed. 215), the Court on this question says:

"To this must be added the obvious fact that anything that develops the territory which the railroad serves must necessarily be of benefit to it, and that no agency for such development equals that of good roads."

The railroad here transports passengers, freight, and commodities; the public travel to get to the station, they haul freight from the station; and it is now well known that good roads and good streets are a great factor in human happiness, as well as a great benefit to the territory in which they are, and, unquestionably, if these streets are good, facilities for transportation will be good, and the business of the railroad will be benefited.

As to whether an assessment upon the basis of feet frontage without giving the railroad company an opportunity to be heard is a taking of property without due process of law, and unconstitutional: This must be answered in the negative under the authority of *Tonawanda v. Lyon*, 181 U. S., 389; 21 Sup. Ct., 609; 45 L. Ed., 908; *Wagner v. Baltimore*, 239 U. S., 217; 36 Sup. Ct., 66; 60 L. Ed., 230; *Hancock v. City of Muscogee*, 250 U. S., 454; 39 Sup. Ct., 528; 63 L. Ed., 1081; *Branson v. Bush*, 251, U. S., 182; 40 Sup. Ct., 113; 64 L. Ed., 215

As to plaintiff's claim that at the time of the passage of the ordinance authorizing the improvement and the levy of assessment, no statute had been passed authorizing the city council of Easley to levy such assessment, and that the statute of February 21, 1919, purporting to ratify the action of the city council, was inoperative. A sufficient answer to this is that, even if at the time the city council passed the ordinance there was no legislative authority for this action, yet this was cured by the Act of Legislature of February 21, 1919, wherein the Legislature ratified and confirmed the action of city council, declaring that—

"Such assessments so levied by said city council of * * * Easley are hereby declared of full force and effect and valid liens against the property assessed, bearing interest, as provided therein, from the date of levy." Acts 1919, p. 585.

The Legislature validated and sanctioned an act which it might have originally authorized. The defect in the ordinance levying the assessment for want of prior legislative sanction was cured. *Duke v. County of Williamsburg*, 21 S. C., 414; *Hodge v. School District*, 80 S. C., 518; 61 S. E., 1009; *Dove. v. Kirkland*, 92 S. C., 313; 75 S. E., 503.

The exceptions are sustained and judgment reversed.

MR. JUSTICE COTHRAN disqualified.