**WILLIAMS, Mayor, et al. v. ATLANTIC COAST LINE R. CO.**

(Circuit Court of Appeals, Fourth Circuit. January 15, 1927.)

No. 2550.

1. **Courts ⬅359—Federal courts must apply state law in determining question affecting title to land.**

Federal courts, in deciding question affecting title of land, must apply law of the state in which land is situated.

2. **Municipal corporations ⬅654—Evidence held to show railroad had title to right of way claimed by municipality.**

Evidence held to show that railroad had title to portions of right of way claimed by municipality, and that municipality had not acquired right to use such lands as streets by prescription or otherwise.

3. **Adverse possession ⬅31—In South Carolina, title to portions of railroad right of way may be adversely acquired only by construction of permanent structure thereon.**

Under South Carolina law, title of portions of railroad right of way may be acquired by adverse possession; but possession must have been open, notorious, uninterrupted, exclusive, hostile, and under a claim of right, and evidenced by erection of some permanent structure, the effect of which has been to exclude railroad from use of right of way, accompanied by notice to the railroad of an intention to claim adversely.

4. **Estoppel ⬅93(1)—"Estoppel," precluding railroad asserting title to right of way claimed by municipality, arises only when it permits expenditures or improvements thereon.**

"Estoppel" sufficient to preclude railroad from asserting title to right of way claimed by municipality arises only where railroad stands by and permits expenditures or improvements on right of way under circumstances calling for protest.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Estoppel].

5. **Railroads ⬅82(2)—"Abandonment" of right of way by railroad involves intention to abandon.**

"Abandonment" of portion of right of way claimed by municipality, which would preclude railroad from asserting title thereto, involves more than mere nonuser, in that there must be an intention on part of railroad to abandon.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Abandon —Abandonment.]

**6. Railroads ⟨key⟩82(2)—Railroad does not abandon portion of right of way by permitting public to travel over parts not used.**

Railroad's permitting public to travel on parts of right of way not needed by it does not constitute abandonment thereof.

**7. Injunction ⟨key⟩35(2)—Railroad in fact in possession, though permitting public to use right of way, may maintain bill to enjoin paving street thereon.**

Where railroad is in fact in possession of right of way, though permitting public to use portions thereof in subordination to its rights, its possession is such as to authorize maintaining bill to enjoin town from laying hard surface paving on portions of street alleged to be within right of way.

**8. Injunction ⟨key⟩36(2)—Injunction is proper remedy to prevent cloud to railroad's title to right of way by paving certain portions of street therein.**

Railroad is entitled to injunction to prevent cloud being cast on its title to right of way by paving certain portions of street alleged to be within right of way.

**9. States ⟨key⟩203—State is not necessary party to railroad's suit to enjoin town from paving certain streets within right of way.**

State of South Carolina is not necessary party to railroad's suit to enjoin town from paving certain portions of street alleged to be within right of way.

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Ernest F. Cochran, Judge.

Suit by the Atlantic Coast Line Railroad Company against R. J. Williams, as Mayor, and A. H. Buchan and others, constituting the Town Council, of Mullins, S. C., and the Town of Mullins, S. C. Decree for complainant, and defendants appeal. Affirmed.

A. F. Woods, of Marion, S. C., for appellants.

M. C. Woods, of Marion, S. C., and Henry E. Davis, of Florence, S. C. (Thomas W. Davis, of Wilmington, N. C., on the brief), for appellee.

Before ROSE and PARKER, Circuit Judges, and McCLINTIC, District Judge.

PARKER, Circuit Judge. This is an appeal from an order granting an injunction. The complainant in the court below was the Atlantic Coast Line Railroad Company, a corporation of the state of Virginia, and the defendant was the town of Mullins, S. C. The jurisdiction of the court was based on diversity of citizenship. The bill prayed that the town be enjoined from laying hard-surface paving upon certain portions of streets alleged to be within the right of way of the railroad. The town filed answer, denying the title of the railroad to the land in controversy, setting up title in itself by prescription, adverse possession, abandonment, and estoppel, and asserting that the railroad had no such possession of the locus in quo as would enable it to maintain a bill in equity for injunctive relief.

The learned District Judge exhaustively reviewed and analyzed the evidence in an able opinion filed in the cause, and it is not necessary that we repeat here what was so well said by him. The facts necessary to an understanding of the points involved, briefly stated, are as follows:

The complainant railroad is the successor in interest and vested with all the rights acquired by the Manchester & Wilmington Railroad Company, which, in the year 1852, constructed a line of railway through the territory now embraced by the town of Mullins. Section 17 of the charter of that company provided that, in the absence of any contract signed by the owner, it should be presumed that the land upon which the railroad should be constructed, together with a space of 65 feet on each side of the center of the road, had been granted to the company. Section 18 provided that all lands within 65 feet of the center of the road, not theretofore granted to any person nor appropriated by law to the use of the state, should vest in the company as soon as the line of road should be definitely laid out, and that any grant thereafter covering such lands should be void.

In October, 1849, one William S. Mullins executed and delivered to the railroad company a deed, authorizing it to enter upon any tract of land belonging to him through which it might desire to construct its road, and to use, occupy, and possess land adjacent to its road, not exceeding 130 feet in width. This deed, however, did not describe any tract of land as owned by the grantor, and there is no competent evidence showing that he ever owned any part of the land in controversy. As stated above, the railroad was constructed in 1852, and since that time the complainant railroad and its predecessors in title have claimed, possessed, occupied, and exercised dominion over a right of way through the town 130 feet in width.

The portions of streets in dispute are South Front street, lying for two blocks on the southerly edge of the right of way between Smith and Park streets; two small triangular portions of North Front street,

one near Smith street and the other near Park street; and the portion of Smith street which is supposed to cross the right of way from the north and end at South Front street. The evidence is that these portions of streets have been used as such for 40 years or more. When the railroad was constructed in 1852, the company placed its station, pump, woodrack, etc., on the right of way between what are now Smith and Park streets, and, in order to gain access to the station, and for other purposes, the public began to travel over the portions of the right of way now in dispute. In 1872 the town of Mullins was chartered, and thereafter streets were laid out and worked by the town. The public continued to travel over the portions of the right of way now in dispute, and the town has worked them as a part of its streets from time to time, but no permanent or substantial improvements have been placed thereon. Nothing has been done which has interfered with the railroad's use of its right of way, and from time to time, with certain unimportant exceptions, as the town has desired to put down or erect permanent structures such as sewer lines, water mains, and a watchman's booth on the right of way, it has sought and obtained the permission of the railroad. There was no substantial evidence that the use made by the public of the right of way had been other than permissive, and there was no evidence whatever that the town had erected any structure of a permanent nature on the disputed area, or taken exclusive possession of any part thereof under claim of right. Smith street, as a street of the town, terminated at the right of way, and, while the public has for years used a crossing at Smith street to reach the disputed portion of South Front street, there is no evidence that this has been anything more than a permissive user in all respects similar to the use made of South Front street.

[1, 2] We agree with appellant that, in deciding questions affecting the title to the land in controversy, we must apply the law of the state of South Carolina, where the land is situate. Burdine v. Southern Public Utilities Co. (C. C. A. 4th) 11 F.(2d) 29; U. S. v. Fox, 94 U. S. 315, 24 L. Ed. 192. But, when we apply this law to the facts of the case, we are satisfied that the District Judge was correct in holding that the railroad had title to the portions of the right of way in controversy, and that the town had not acquired the right to use them as streets by prescription or otherwise.

The railroad claims title under the deed from W. S. Mullins, which grants a right of way of a width not exceeding 130 feet, and the proof shows that it has taken and possessed the full 130 feet. The town contends, however, that this deed does not describe any particular land, and that there is no showing that Mullins ever owned the land in controversy. Its contention, therefore, is that, as there is no showing that Mullins ever had title, the deed cannot be held to convey title, and that it is not even color of title, as it does not embrace in terms the land in controversy. We agree with the town that, in the absence of a showing that Mullins had title to the land in controversy, the deed offered in evidence could not be held to convey title, and we also agree that it does not sufficiently describe this land to constitute color of title thereto. This does not help the town, however; for, if the deed be disregarded, the railroad can rely upon the presumption of a grant of a 130-foot right of way raised by sections 17 and 18 of the charter of the Manchester & Wilmington Railroad, mentioned above.

The town contends that plaintiff cannot rely upon this presumption, because it relies upon the deed from Mullins, and the presumption of grant arises only "in the absence of any contract * * * signed by the owner," with the burden upon the railroad to establish the absence of such contract. A. C. L. R. R. v. Dawes, 103 S. C. 507, 88 S. E. 286; C. & N. W. Ry. Co. v. Ford, 105 S. C. 80, 89 S. E. 809; Sou. Ry. Co. v. Com'rs of Public Works (C. C. A. 4th) 246 F. 383. But if Mullins was the owner of the land in controversy, so that the deed from him would defeat the statutory presumption, then the deed from him conveyed title, and the presumption is not needed. If he was not the owner, the deed from him could not interfere with the presumption. It appears that the railroad claimed the disputed portion of the right of way in good faith under the deed, and there is no evidence or suggestion that it had any other contract relating thereto. We think, therefore, that in holding the deed ineffectual to pass title, because not shown to have relation to the land, we should not hesitate to give effect to the presumption which arises in the absence of contract. The trial judge was correct, therefore, in holding that at the points in question the railroad had acquired title to a right of way 130 feet in width, which covers the portions of the streets in controversy.

[3] The next question is whether the town

has acquired right by prescription to the portions of the right of way embraced within the streets. This question must also be answered against the town, for it seems to be settled by the South Carolina decisions that a city or town cannot acquire the right to a street over the right of way of a railway company by prescription. Blume v. Southern Ry. Co., 85 S. C. 440, 67 S. E. 546; Sanders v. Southern Ry. Co., 97 S. C. 423, 81 S. E. 786; Matthews v. Seaboard Air Line Ry., 67 S. C. 499, 46 S. E. 335, 65 L. R. A. 286; A. C. L. R. Co. v. Searson (S. C.) 135 S. E. 567.

Blume v. Southern Ry. Co., supra, was an action instituted by an abutting property owner to recover damages for the closing of a street. The question presented was whether the public had acquired by prescription the right to use a street over defendant's right of way. In denying the right, the court said:

"Prescription rests in the presumption of a grant or dedication, and, as the railroad company has no power either to grant or dedicate its right of way for any other than the purpose for which it was acquired, the presumption cannot arise; and therefore neither private individuals nor the public can acquire by prescription any right to use the right of way of a railroad, which is incompatible with the purposes for which it was acquired, or which would hinder or impair the railroad company in discharging its duties to the public, imposed upon it by law."

In one of the latest cases dealing with the subject, A. C. L. R. Co. v. Searson, supra, the court said:

" 'A right of way under charter cannot be acquired adversely to the company by prescription. The width of the strip of land necessary for railroad purposes is fixed under the authority of the state, and this fact creates a strong presumption that the whole of it should be preserved as necessary for the purposes for which it was set apart.' Matthews v. Seaboard Air Line Railway, 67 S. C. 499, 46 S. E. 335, 65 L. R. A. 286. 'The construction and operation of one track upon its location is an assertion of its right to the entire width of its right of way. The presence of a track constantly in use is a defiant badge of ownership, and the only practical assertion of title that can be made.' Id.; Jones on Easements. * * * 'The public has an interest in the construction and operation of railroads as highways which are burdened with duties to the public. Therefore a railroad company cannot dis-

pose of or so use its right of way as to impair or destroy its ability to serve the public.' Blume v. Southern Ry., 85 S. C. 440, 67 S. E. 546. * * * 'The right of way of a railroad, having been acquired for a public purpose, cannot be lost by a prescriptive use or adverse possession, unless by the erection of a permanent structure, accompanied by notice to the railroad company of an intention to claim adversely to its right.' Atlanta & C. A. L. Ry. Co. v. Limestone, 109 S. C. 444, 96 S. E. 188. 'According to the decisions of this court, the owner of the fee in a railroad right of way has the right to use so much thereof as is not in the actual use and occupancy of the railroad company, provided the use be not inconsistent with the claim of right for railroad purposes. It follows from this that a right of way of a railroad, having been acquired for a, public purpose, cannot be lost by prescriptive use or adverse possession, unless by erection of a permanent structure, accompanied by notice to the railroad of an intention to claim adversely to its right.' Id."

South Carolina is one of the states which hold that title to portions of the right of way may be acquired by adverse possession; but it is also held that, to acquire title in this way, it must appear, not only that the possession relied on has been open, notorious, uninterrupted, exclusive, hostile, and under a claim of right, but also that it has been evidenced by the erection of some permanent structure the effect of which has been to exclude the railroad from the use of the right of way in question, accompanied by notice to the railroad company of an intention to claim adversely to its rights. Atlanta & C. A. L. Ry. Co. v. Limestone Globe Land Co., 109 S. C. 444, 96 S. E. 188; A. C. L. R. Co. v. Epperson, 85 S. C. 134, 67 S. E. 235. In the case at bar there was no permanent structure, no notice of adverse claim, and the possession was neither exclusive nor hostile. On the contrary, the evidence bears out the presumption that it was permissive. And recognition of the rights of the railroad is contained in a number of contracts executed by the town, to which were attached maps showing the right of way as covering the full 130 feet. The learned trial judge succinctly analyzed the evidence bearing on this phase of the case as follows:

"Now, what are the facts upon which the defendants' claim of adverse possession must rest in this case? Briefly, they may be stated as follows: The railroad company has a right of way, 130 feet wide. A portion of

this right of way is not then needed for corporate purposes. The town and public generally use such portion of the street for a long period of time, 30 or 40 years or more. The town works this portion as it does its other streets. The nature of the work is not shown, but it may be assumed that it is such work as is ordinarily done in a country town to keep the streets passable. A few shade trees are planted in the streets apparently by private citizens, for there is no evidence that the town planted them. In the several contracts made between the town and the railroad which have been adverted to, the maps forming a part of such contracts all show the right of way of the railroad as 130 feet wide throughout, both within and without the disputed area. In the map attached to one of the contracts with the town, the word 'street' is marked on a portion of what the town claims as North Front street, and the same word is marked on a portion of what the town claims as South Front street.

"On the map which was erroneously served upon the defendants at the preliminary hearing, as a part of this contract, the same word 'street' is marked, and there are lines indicating that North Front street cuts into the right of way of the railroad as claimed by the town. But upon both of these maps the right of way is also shown as 130 feet wide within the disputed area. The map made a part of the contract between the railroad and the Dixie Sales Motor Company has the word 'street' also similarly marked, and the lines of this map also indicate North Front street as cutting into the right of way, but likewise the right of way is shown as 130 feet wide and embracing the disputed area. The town in constructing a sewer, placed the sewer line for a short distance slightly within the right of way near Smith street, and similarly near Park street, but there is no evidence that the railroad ever knew of this slight encroachment, and being placed underground, and the encroachment being exceedingly slight, it cannot be said that it was so open or notorious that notice could be inferred. There is no evidence that anything the town ever did with reference to these streets claimed was done under any claim of right. The buildings erected by private citizens were not on the right of way of the railroad, or where they were on the right of way of the railroad, were by written license or contract granting permission, except in the case of one building owned by the section master, which encroached only 4 inches and this was by mistake."

The town bases its contention as to aban-donment and estoppel upon the decision of the Supreme Court of South Carolina in Atlanta & C. A. L. Ry. Co. v. Easley, 117 S. C. 494, 109 S. E. 285; but we do not think that the doctrine of that case is applicable here. That was a suit to enjoin the collection of a paving assessment, and it appeared that the railroad had stood by and allowed the town to lay paving on the street in controversy without protest. It then sought to enjoin the collection of the assessment on the ground that the paving was not lawfully laid on a street, but on land which was a part of its right of way. The court denied the injunction on the ground that the portion of the right of way used for a street "had been abandoned and lost by estoppel on the part of the railroad." It should be noted in passing that in the opinion in the Easley Case the court used expressions with regard to the town having acquired the right to use the street by adverse possession which are not in harmony with what was decided in the Blume Case, supra, nor with what was said in the recent Searson Case, supra. Of course, we are bound not by what the court says, but by what it decides (Brooks v. Marbury, 11 Wheat. 78, 90, 6 L. Ed. 423); and we do not understand that the decision in the Blume Case has been overruled in any particular by what was decided in the Easley Case, but that, on the contrary, the doctrine of the Blume Case has been expressly approved in the Searson Case.

[4] We see no element either of estoppel or abandonment presented by the case at bar. Estoppel in this class of cases arises where the railroad stands by and permits another to make expenditures or improvements on its right of way under such circumstances as would call for notice or protest. Southern Ry. Co. v. Day, 138 S. E. ——, decided by the Supreme Court of South Carolina, November 20, 1926, citing 10 R. C. L. 782; Atlanta & C. A. L. Ry. Co. v. Victor Mfg. Co., 93 S. C. 397, 76 S. E. 1091. But here the town has made no permanent improvements on the streets in controversy, as in the Easley Case, nor has the railroad been silent under circumstances calling for notice or protest. The use of the streets over the right of way did not interfere with the railroad's use of the property, and, as was well said by the District Judge:

"The law does not require a railroad in order to preserve its right of way to act the dog in the manger and churlishly refuse to allow the public to use a portion of its right of way as a street or road where such portion is not then needed for corporate pur-

poses, and such use in no way interferes with any rights of the railroad in the premises and is not hostile or asserted under any claim of right."

[5, 6] Abandonment involves more than mere non-user. There must be an intention on the part of the company to abandon. Lorick & Lowrance v. Southern Ry., 87 S. C. 71, 68 S. E. 931; Denver & R. G. R. Co. v. Mills (C. C. A. 8th) 222 F. 481. And to say that the railroad company intended to abandon any portion of its right of way merely because it allowed the public to travel over parts not needed by it at the time is absurd. As said in Jones on Easements, and quoted with approval in both the Matthews and the Searson Cases: "The construction and operation of one track upon its location is an assertion of right to the entire width of its right of way. The presence of a track constantly in use is a defiant badge of ownership, and the only practical assertion of title that can be made."

[7, 8] We see no merit in the contention that the railroad cannot maintain the bill because not in possession of the property. As shown above, the railroad was in fact in possession, and the use of the property by the public was permissive and in subordination to its rights. There can be no question that in such case injunctive relief was proper to prevent a threatened trespass which would be a continuing one and would interfere with the use of complainant's property for railroad purposes. See Crown Orchard Co. v. Dennis (C. C. A. 4th) 229 F. 652; Evans v. Victor (C. C. A. 8th) 204 F. 361; 32 C. J. 129 et seq.; 14 R. C. L. p. 453; note 99 Am. St. Rep. at page 744, and cases cited. Injunction was proper also to prevent a cloud being cast upon complainant's title by the threatened action of the town. 5 R. C. L. 662; Ketchin v. McCarley, 26 S. C. 1, 11 S. E. 1099, 4 Am. St. Rep. 674; De Witt v. Van Schoyk, 110 N. Y. 7, 17 N. E. 425, 6 Am. St. Rep. 342; notes, 140 Am. St. Rep. 990 and 8 L. R. A. 729.

[9] Nor do we see any merit in the contention that the state of South Carolina is a necessary party to the suit, and that, as the state cannot be made a party, the suit must fail. Nothing need be added to what was so well said by the learned District Judge in dealing with that contention.

After a careful consideration of the record and briefs and the able arguments of counsel, we are satisfied that the decree of the court below was correct, and same is accordingly affirmed.

Affirmed.