NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD
COMPANY vs. CHARLES B. BENEDICT.

Berkshire.    September 14, 15, 1897. — October 20, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Boundary — Evidence — Ancient Deed — Abandonment of Easement.*

At the hearing of. a suit in equity, if the boundary line between the railroad loca-
tion of the plaintiff's lessor and the defendant's premises on the west is in dis-
pute, a copy of the record in the registry of deeds of an instrument signed,
sealed, and acknowledged in 1849, by the defendant's predecessors in title,
reciting their "occupancy of premises owned by the" railroad corporation,
"particularly those premises situated westerly of the stores and buildings of
ours," and disclaiming all right and title "to premises or land of said company
which we now occupy or may hereafter occupy, . . . and now admit that the
stone walls or underpinning on which our buildings stand is the westerly line
of our premises," although not formally running to the corporation, is admis-
sible in evidence.

Non-user by A. of an easement, accompanied by open and adverse occupation for
more than fifty years by B. and his successor, under a claim of title, with a
recognition on A.'s part that such claim is well founded, shown by his accept-
ance and recording of an instrument executed by B., who disclaims therein
title to land of A. beyond a line, which line includes the land subject to the
easement, and the absence during such period of any claim by A. and his suc-
cessor of title to or an easement over any portion of the land, will warrant a
finding, in a suit by A.'s successor to restrain an alleged trespass by B.'s suc-
cessor, that the easement has been abandoned.

BILL IN EQUITY, filed in the Superior Court, May 21, 1897,
to restrain an alleged trespass upon certain land in Great
Barrington, which the plaintiff averred that it was entitled to
use and occupy for railroad purposes. The answer alleged that
the defendant was the owner in fee of the land, upon which he
was excavating the soil and laying the foundation for the erec-
tion of a building thereon. A temporary injunction was granted,
and the case was referred to a master, who found and reported
the following facts.

The land occupied and claimed by the defendant consists of a
parcel about seventy feet long north and south, and thirty-two
feet wide east and west, situated on the easterly side of the
plaintiff's railroad, and immediately south of land used by the

plaintiff for depot purposes in Great Barrington.  The defendant claims title by virtue of certain deeds of conveyance from Silas Sprague, and intermediate conveyances to himself.

The plaintiff claims that a portion of the premises along the westerly side of the same, measuring six feet wide at the south end and eight feet wide at the north end, is covered by and included in the description of land taken by the Berkshire Railroad Company (the plaintiff's lessor) for depot purposes.

On September 3, 1841, the Berkshire Railroad Company, a corporation duly organized by law under a charter granted in 1837, filed with the county commissioners of Berkshire a petition for the assessment of damages for the taking of certain lands therein described for railroad purposes in Great Barrington ; and on September 29, 1841, the corporation filed with the commissioners an amendment to its petition, describing therein certain other lands which it had taken for depot purposes adjoining land described in its petition.  The commissioners thereafter duly assessed damages for the taking of all of the land described in both the petition and the amendment thereto.

These descriptions so filed state the distances and courses of the centre line of the roadway and the width of land taken extending each way from the centre line, but they do not define or refer to boundaries, and no map or plan is referred to therein. " I find that the land described in the above mentioned amended description covers and includes a portion of the premises claimed and occupied by the defendant, which portion extends over and along its westerly side, and is three and three tenths feet wide at the south end and five feet wide at the north end.  I find that the true centre line of said roadway as described by the petition filed by said railroad company is located to the west of the premises claimed by the defendant, and is distant from the western line of the same twenty-two and forty-seven one-hundredths feet at its south end and twenty-two and ninety one-hundredths feet at its north end."  On May 19, 1843, one Silas Sprague gave a warranty deed, describing and purporting to convey the premises now claimed and occupied by the defendant to Gilbert L. Granger and others, from whom, by mesne conveyances, the premises came to the defendant, who was in possession of the same at the time of the bringing of this

suit.   The defendant and his predecessors in title had contin-
uously occupied and used the whole of the premises openly and
adversely, claiming title thereto, from the date of the convey-
ance of Sprague to Granger and others, up to the commence-
ment of this suit.   During most of that period the premises were
entirely covered by buildings erected thereon, standing upon
stone foundations, the outside face of which came even with the
boundary lines of the land.   On March 21, 1844, Sprague gave
the Berkshire Railroad Company a warranty deed, describing
and purporting to convey to the corporation in fee all the land
included in the description of its location across the premises
of Sprague (a portion of which is that part of the tract claimed
by the defendant covered by the location as above stated), and
also other land adjoining thereto, now used by the plaintiff for
depot purposes.   About October 11, 1896, the buildings standing
upon the land claimed by the defendant were destroyed by fire,
and he was proceeding and intending to rebuild upon the same
foundation at the time he was enjoined therefrom by the proceed-
ings in this case.   No evidence was introduced tending to show
that either the Berkshire Railroad Company or its lessee, the
plaintiff, ever claimed title to or an easement over any portion
of the premises occupied by the defendant and his grantors until
subsequently to the burning of the buildings thereon, as above
stated.   It was agreed by the parties that the plaintiff is the
lessee of the Berkshire Railroad Company, and entitled to all
lands, rights, easements, and franchises belonging to the lessor, or
to which the lessor was legally entitled at the time of the exe-
cution of the lease.

It was agreed that the records of the county commissioners of
Berkshire show that the Berkshire Railroad Company filed with
the county commissioners on December 1, 1840, the time named
in their charter, a survey and location of their railroad, with
maps of the same; that the survey commences at a monument
standing in the line separating the States of Massachusetts and
Connecticut, this being the southern terminus of this railroad,
and then runs, giving courses and distances, to a point in the
town of West Stockbridge, being the northern terminus of the
railroad; that the survey mentions no boundaries of the route,
but that three maps were filed accompanying the survey; that

no such maps are now on file, and there is no evidence whether they have been on file since December 1, 1840, except what appears in the records, and there is evidence that they have not been on file during at least forty years last past; that on May 18, 1841, and June 7, 1841, petitions were filed amending the location as filed December 1, 1840; and that when, on September 3, 1841, the railroad company filed a petition for the assessment of damages, the lands petitioned for were described with reference only to the centre line of the railroad and the boundary lines of adjoining landowners, and the centre line was described in courses and distances, but without reference to boundaries or to any map or plan, except as above stated.

A copy of the record in the registry of deeds of the following instrument, dated April 3, 1849, and signed, sealed, and acknowledged by G. L. Granger, Henry L. Hill, and Rodney Hill, was admitted in evidence, against the plaintiff's objection: " Whereas our own convenience *indues* [*sic*] the use and occupancy of premises owned by the Berkshire Railroad Company, particularly those premises situated westerly of the stores and buildings of ours erected on Railroad Street in Great Barrington; Now therefore, Be it known that we, the subscribers, do for ourselves, our heirs, and others claiming from or under us or either of us, hereby disclaim all right, title, or demand to premises or land of said company which we now occupy or may hereafter occupy as aforesaid, by the permission or non-objection of the officers or stockholders of said railroad, and now admit that the stone walls or underpinning on which our buildings stand, is the westerly line of our premises as purchased of Silas Sprague."

Hearing before *Maynard,* J., who admitted in evidence the paper above set forth, against the plaintiff's exception, found, upon the facts stated in the master's report, that whatever easement, if any, the plaintiff or its lessor gained, by its taking as shown by the record of location, if not merged in its deed, was abandoned by the plaintiff; that the defendant had gained title to the land in dispute by prescription ; ordered the injunction dissolved and the bill dismissed; and reported the case for the determination of this court.

If the findings and the ruling admitting in evidence the paper

excepted to were right, the judgment was to be affirmed ; otherwise, such entry was to be made as law and justice require.

*A. C. Collins,* for the plaintiff.

*H. C. Joyner,* ( *O. C. Bidwell* with him,) for the defendant.

ALLEN, J.   The copy of the record of the deed or paper executed in 1849 by the defendant's predecessors in title was competent.   Although not formally running to the Berkshire Railroad Company, there can be no doubt that that company was in reality the other party to it.   The disclaimer of right and title up to the walls of the buildings was for the benefit of the railroad company, and nobody except the railroad company, so far as appears, had any interest in the subject to which the paper related.   It was obviously designed to affect the title to the land, and to define the boundary line, and therefore was an instrument which it was proper to record in the registry of deeds.   A deed more than thirty years old, if produced from the proper custody, requires no formal proof ; and in this Commonwealth an office copy of an ancient recorded deed may be admitted in evidence as if it were the original deed.   *Stetson* v. *Gulliver,* 2 Cush. 494, 498.   *Commonwealth* v. *Emery,* 2 Gray, 80.   *Thacher* v. *Phinney,* 7 Allen, 146.   *Samuels* v. *Borrowscale,* 104 Mass. 207.   *Boston* v. *Richardson,* 105 Mass. 351, 371, 372.

This paper had a tendency to show that the signers were the owners of buildings adjacent to the railroad, on the east side thereof, and that they were in the use and occupancy of some land to the west of their buildings ; and they thereupon signed this formal paper, which was under seal and acknowledged, for the purpose of showing that such use and occupation were by the permission of the railroad company, and that they admitted that the stone walls on which their buildings stood showed the westerly line of their premises.   If the railroad company accepted this paper and put it on record, it had some tendency to show that it made no claim to the land under the foundation walls of the buildings, and that an agreement was then had as to the true boundary line.   In point of fact, according to the report of the master, the location of the railroad extended a little farther to the east, and included a strip of land under the buildings, three and three tenths feet wide at the south end, and five feet wide at the north end.   But the location was made in such

form that its outside lines might not be well understood, and in 1843 the owner of the adjoining land on the east gave a deed to the defendant's predecessors which included this narrow strip now in controversy. Occupation followed, and buildings were soon erected covering said strip of land, and for fifty-three years after the date of the deed the grantees and their successors continuously occupied and used the same openly and adversely, claiming title thereto, and there was nothing to show that the Berkshire Railroad Company or its lessee (the present plaintiff) ever claimed title to or an easement over any portion thereof, until after October 11, 1896. From this evidence an abandonment of the easement might be found. It is not a case of mere non-user of the easement, but of non-user accompanied by adverse occupation under claim of title, with a recognition on the part of the railroad company that such claim of title was well founded, as shown by its acceptance of the instrument of 1849. An intention to make no claim to a right of way over the strip of land in dispute might therefore be found. *Westcott* v. *New York & New England Railroad*, 152 Mass. 465, and cases there cited. *Bicknell* v. *New York & New England Railroad*, 161 Mass. 428.

There might be a difficulty in establishing the defendant's asserted title by prescription, by reason of St. 1861, c. 100, and later statutes ; but this does not affect the finding on the ground of abandonment.                    *Judgment affirmed.*