The **PHILLIPS COMPANY, a Colorado Limited Partnership, Plaintiff,**

v.

**SOUTHERN PACIFIC RAIL CORPORATION, a Delaware corporation, The Denver and Rio Grande Western Railroad Company, Inc., a Delaware corporation, and Southern Pacific Transportation Company, a Delaware corporation, Defendants.**

Civ. A. No. 93–Z–1461.

United States District Court,
D. Colorado.

Oct. 2, 1995.

George Maurice Allen, Herbert S. Klein, Herbert S. Klein, P.C., Telluride, CO, for Phillips Co.

William D. Watson, John Robert Webb, Holme Roberts & Owen, LLC, Denver, CO, for Denver and Rio Grande Western Railroad Company, Southern Pacific Rail Corporation.

## ORDER GRANTING SUMMARY JUDGMENT

WEINSHIENK, District Judge.

This case arises through plaintiff's claim against defendant The Denver and Rio Grande Western Railroad Company, Inc. ("D & RGW") under 43 U.S.C. § 912 ("Section 912") to ownership of a portion of D & RGW's railroad right-of-way as a result of an alleged abandonment. Plaintiff alleges that the abandonment occurred prior to October 4, 1988. The date of any abandonment is of importance because the provision of Section 912 under which plaintiff claims was amended effective October 4, 1988 by the passage of 16 U.S.C. 1248(c).

In August, 1993, D & RGW moved to dismiss plaintiff's complaint on the basis that the alleged abandonment could not have occurred without authorization by the Interstate Commerce Commission ("ICC") under 49 U.S.C. § 10903(a) ("Section 10903"), which D & RGW asserted had not been granted. Plaintiff has never asserted that the ICC authorized abandonment under Section 10903.

The Court referred that motion to United States Magistrate Judge Abram, who recommended that the case be dismissed. Rather than accepting that recommendation, the Court followed the suggestion of plaintiff and referred the issue of whether abandonment had occurred prior to October 4, 1988, to the ICC by Order dated January 4, 1994, pursu-

ant to 28 U.S.C. § 1336(b). The Court referred this matter to the ICC because there was case law concerning railroad abandonment, particularly *Allard Cattle Co. v. Colorado & S.R. Co.*, 33 Colo.App. 39, 516 P.2d 123 (1973), *aff'd*, 187 Colo. 1, 530 P.2d 503 (1974), in which the ICC was not mentioned.

Thereafter, the Phillips Company filed a document captioned Application for Abandonment with the ICC. After both procedural and substantive objections by the D & RGW to processing of the filing as an abandonment application, the ICC issued an Order on August 22, 1994, ordering that the Phillips Company's ICC filing be handled as a declaratory order matter, rather than as an adverse abandonment matter.

In response to the Court's referral, on April 4, 1995 the ICC issued a decision (the "ICC Decision", Finance Docket No. 32518). A copy of the ICC Decision is attached. Based on the ICC Decision, defendants [1] moved for judgment on the pleadings. The Court treated the motion as a motion for summary judgment and has considered the parties' briefs, as well as oral argument presented on September 20, 1995.

As the referring Court under 28 U.S.C. § 1336(b), this District Court has jurisdiction to review the ICC's decision (which is a Final Order of the ICC) under both 28 U.S.C. § 1336(b) and 28 U.S.C. § 1398(b).

The ICC has determined the issue of abandonment by stating clearly, "D & RG cannot be found to have abandoned the line under 43 U.S.C. 912 and 16 U.S.C. 1248(c). That is so because the commission has never exercised its authority at 49 U.S.C. 10903 to permit the abandonment." (ICC Decision, p. 4.) The ICC has written a very detailed decision drawing a bright line. The bright line is that abandonment under Section 912 could occur only after ICC approval of abandonment un-

---

[1]. Southern Pacific Rail Corporation and Southern Pacific Transportation Company have been added as defendants pursuant to plaintiff's Second Amended Complaint and Southern Pacific Transportation Company's Motion to Intervene. In the Second Amended Complaint, filed on March 30, 1995, the Court permitted the Plaintiff to allege a Class Action as to those parts of a 19 mile stretch of the D & RGW's Aspen Branch

right of way between the Mid–Continent Loading Station near Carbondale, Colorado and the end of existing rails, near Woody Creek, Colorado as to which D & RGW's predecessor obtained a right of way under the 1875 General Railway Act. No class action proceedings have been conducted in this case and no class has been certified.

der Section 10903. The ICC noted that Section 10903 and 16 U.S.C. § 1247(d), "reflect a Congressional policy of regulating the termination of service and the dismantling of right of way, a policy that would be jeopardized under Phillips' theory that *de facto* abandonment enables a court to authorize transfer of the line under 43 U.S.C. 912." (ICC Decision, p. 6.) The decision goes on to say that "Phillips' theory would in effect create a system of dual jurisdiction over abandonments for large segments of the nation's rail system under which anyone with a reversionary interest in railroad right of way could circumvent our jurisdiction by obtaining an abandonment ruling in a state or federal court. Indeed, under Phillips' theory, railroads could terminate their service obligation without our consent simply by ceasing service and getting a court to declare that the property reverted because service had been abandoned *de facto*." Id.

■ Extensive case law prescribes that when a court reviews an agency's construction of a statute within the jurisdiction of that agency, it has to look first of all as to whether Congress had directly spoken to the precise issue. If the intent of Congress is clear, the court can look no further, for the court as well as the agency must give effect to the unambiguous intent of Congress. However, if the court determines that Congress has not addressed directly the precise question at issue, then the court does not impose its own construction of the statute. Rather, if the statute is silent or ambiguous with respect to the specific issue, the sole question for the court is whether the agency's answer is based on a permissible construction of the statute. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). The Tenth Circuit in *Rubio–Rubio v. Immigration and Naturalization Service*, recognized the heavy burden to show that an administrative agency reached "an impermissible construction." 23 F.3d 273, 276 (10th Cir.1994).

■ The ICC has decided that the railroad property could not have been transferred to plaintiff under Section 912 before the ICC authorized abandonment of the line

under Section 10903. Section 10903 is a statute within the jurisdiction of the ICC. Congress has not directly spoken to the interplay of Section 912 and Section 10903. This case is apparently one of first impression as to the interplay between the reversion provisions of 43 U.S.C. § 912 and those provisions of the Interstate Commerce Act providing for regulatory authority as to abandonment of rail service under 49 U.S.C. § 10903. The ICC bright line rule that abandonment under Section 912 cannot occur without ICC permission to abandon under Section 10903 is not arbitrary and capricious. The Court finds the ICC interpretation reasonable, and will defer to that reasonable interpretation.

■ Plaintiff challenges the ICC decision by claiming that D & RGW submitted a false Verified Statement to the ICC. The Court notes that the language of the ICC's April 18, 1995 Order, under the heading "Issues Raised by the Parties" references a Verified Statement filed by a D & RGW witness as follows: "DRGW admits that rebuilding would be necessary to restore service but argues that Phillips has overstated the extent that would be required. DRGW witness James L. Ozment estimates that, based on observations made in July 1993, an expenditure of $30,000 could repair the line between Mid Continent and Woody Creek for minimal freight service." The court need not address this claim because the ICC Decision does not rely on this Verified Statement or, for that matter, any other factual issue beyond the undisputed fact that the ICC has not authorized abandonment.

■ Plaintiff also complains that the ICC improperly treated the referral as a declaratory rather than an abandonment proceeding. The Court finds the ICC Decision resolves the issue referred by the Court. Nothing in this Order either precludes plaintiff from commencing a new ICC proceeding for a decree of prospective abandonment under Section 10903 or resolves any question as to plaintiff's standing to commence such a proceeding.

Accepting the ICC analysis of the interplay of Section 912 and Section 10903, the

Court will grant defendants' motion for summary judgment.

ACCORDINGLY, it is ordered that:

1. Defendants' Motion for Judgment on the Pleadings, heard by this Court as a motion for summary judgment, is granted.

2. Plaintiff's complaint in this matter is dismissed with prejudice.

3. This order is stayed until October 1, 1995.

4. Each party shall bear its own costs.

### APPENDIX

### INTERSTATE COMMERCE COMMISSION DECISION

Finance Docket No. 32518

### THE PHILLIPS COMPANY—PETITION FOR DECLARATORY ORDER

Decided: April 4, 1995

We find that the Denver & Rio Grande Western Railroad Company (DRGW) has not obtained Commission approval under 49 U.S.C. 10903 to abandon its Aspen Branch line and that an abandonment may not take place without that approval. As a result, we need not reach the issue referred to us of whether DRGW abandoned service *de facto* before October 4, 1988, within the meaning of 16 U.S.C. 1248(c) and 43 U.S.C. 912.

### BACKGROUND

The Phillips Company of Pitkin County, CO (Phillips) owns and operates a mobile home park adjacent to DRGW's Aspen Branch line. The Aspen Branch line extends in a southeast direction from its main line connection at milepost 360.10 at Glenwood Springs, CO, to milepost 393.66 at Woody Creek, CO. Phillips' property is at milepost 390. A 7.895–mile segment of the line from Woody Creek to Aspen was abandoned in 1968.

In 1992, DRGW discovered that Phillips' mobile home park had encroached upon a portion of its right-of-way. In an attempt to

quiet title, Phillips filed a complaint in a Federal district court on July 12, 1993, asking the court to find that the railroad had abandoned the line and to declare that title to the right-of-way reverts to Phillips under 43 U.S.C. 912.[1] Under this provision, when a court decrees that a railroad right-of-way is no longer used and occupied for railroad purposes, title to the land passes to the adjacent landowner.

Phillips admitted in court that the reverter provision of 43 U.S.C. 912 has been superseded by a 1988 amendment to the National Trails System Act providing that, for abandonments after October 4, 1988, title reverts to the United States. See 16 U.S.C. 1248(c). But Phillips argued that section 1248(c) does not apply here on the grounds that the right-of-way was fully abandoned by 1985.

DRGW moved to dismiss the complaint, arguing that the court lacks jurisdiction to find that the line was abandoned because only the Interstate Commerce Commission may determine whether a railroad right-of-way has been abandoned. The court denied the motion, finding that it could grant the relief sought by Phillips under 43 U.S.C. 912. In making this finding, the court rejected a magistrate's recommendation to dismiss on the grounds that the Commission has not approved abandonment. Notwithstanding the Commission's lack of approval of any abandonment, the court referred to the Commission the purely factual issue of whether rail use had ceased before October 4, 1988.

On May 3, 1994, Phillips responded to the court's referral order by filing a pleading with the Commission entitled "Application For Determination Of Abandonment," asking this agency to find that DRGW, by 1985, had abandoned service over a segment of its Aspen Branch between milepost 375, near Carbondale, CO, to milepost 392, near Woody Creek, CO, a distance of approximately 17.5 miles, in Garfield, Eagle and Pitkin Counties, CO. DRGW replied in opposition to the relief sought by Phillips.

---

1. The complaint was docketed as *Phillips Co. v. Denver and Rio Grande Western R.R.,* No. 93–Z– 1461 (D.Colo. filed July 12, 1993).

In our decision served August 26, 1994, we commenced a declaratory order proceeding and requested comments.[2] On September 26, 1994, DRGW and Phillips filed comments.

## ISSUES RAISED BY THE PARTIES

The parties disagree over whether we have the authority to resolve the purely factual issue raised by Phillips (whether the line ceased to be used for rail purposes no later than October 4, 1988) even if this agency has never approved abandonment of the line. Anticipating that we may determine that we have the authority to resolve this issue, both parties submit evidence on whether the line ceased to be used for rail purposes before October 4, 1988.

### Jurisdiction To Make The Finding Requested By Phillips

Renewing its position in court, DRGW argues that the Commission has never authorized abandonment of the line and that resolution of the issue raised by Phillips could undermine our jurisdiction over abandonment of service by enabling the court to transfer the property to Phillips before abandonment of service is authorized by this agency. DRGW urges us not only to avoid determining whether rail use ceased *de facto* before October 4, 1988, but also to hold that as a matter of law the right-of-way may not revert under 43 U.S.C. 912 until we authorize abandonment of the line.

Citing cases that it raised before the court, Phillips supports the court's finding that it can order reversion of the right-of-way to Phillips under 43 U.S.C. 912 if the right-of-way has been abandoned *de facto*, even though the Commission might not have au-

thorized abandonment under the Interstate Commerce Act.

### The Issue of Whether the Line Was Abandoned in Fact if Not in Law

The parties also dispute whether the line was in fact, if not by law, abandoned before October 4, 1988. Phillips submits affidavits from persons stating that service to the end of the line at Woody Creek terminated before 1988, that the track was graded or had deteriorated before 1988, and that trains had ceased moving over the track before 1988. In its initial filing of May 3, 1994, Phillips submits two engineering surveys of the line purporting to show that the line was dilapidated as of the dates of the reports (February 3, 1993 and August 12, 1993). In its initial filing of May 3, 1994, Phillips also supports its position that there has been an abandonment by submitting eight photographs of different portions of the right-of-way, taken on July 12, 1993.

DRGW concedes that the sole shipper at the eastern end of the line at Woody Creek, the Pitkin Iron Corporation, ceased mining operations in 1982. But the railroad asserts that shipments from this mine continued until 1985 or 1986. DRGW is unable to verify the date of the last shipment. The railroad argues, however, that shipments from this location were at least anticipated as late as 1985 or 1986, even if they did not actually occur. In this regard, DRGW points to what the carrier purports to be a summary of a February 7, 1985 extension to a shipping contract.[3]

DRGW does not point to any other source of post-October 4, 1988 traffic on the segment sought by Phillips to be declared abandoned.[4] The carrier asserts that there are

---

**2.** This proceeding was originally docketed as Docket No. AB–8 (Sub–No. 28), *The Phillips Company—Abandonment—A Line of the Denver & Rio Grande Western Railroad Company* and identified as a "third party" abandonment application, i.e., one filed by a party other than the railroad owning the line that is the subject of the application. In our decision served August 26, 1994, we found that this proceeding was not intended to be, and could not be considered, an abandonment application. We ordered that it be processed as a petition for declaratory order under the current docket number.

**3.** *See* exhibit 7 of DRGW's comments filed September 26, 1994.

**4.** DRGW asserts that it has been storing two private railroad cars on siding near Woody Creek since 1983 under a lease that is active and in good standing. In exhibit 13 of DRGW's comments filed September 26, 1994, S.C. Gordon, one of the carrier's property managers, attests to the existence of this lease but does not provide a copy.

currently two active shippers on the Aspen Branch, a beer distributor at milepost 365 near Glenwood Springs and a chemical shipper at milepost 373.0 (Carbondale). Neither of these shippers is on the segment claimed by Phillips to have been abandoned (between milepost 375 and 392), however. DRGW asserts that there was a shipper at Mid Continent (milepost 375.0) until 1992, Mid Continent Resources, Inc., on the far western end of the segment claimed to have been abandoned by Phillips.

DRGW admits that rebuilding would be necessary to restore service but argues that Phillips has overstated the extent that would be required. DRGW witness James L. Ozment estimates that, based on observations made in July 1993, an expenditure of $30,000 could repair the line between Mid Continent and Woody Creek for minimal freight service.[5] DRGW witness Daniel I. O'Callaghan states that, based on a tour of the track in October 1992, the track could be made suitable for passage of a locomotive, rail plow, and work train if two bridges were repaired. He estimated the cost of those repairs at $26,600.[6] Arguing that Phillips' photographs of the track are unrepresentative of the condition of the track, DRGW submits 13 photographs of the entire Aspen Branch.[7]

DRGW also argues that, notwithstanding the lack of traffic on the line and its poor condition, it stands ready to fulfill its common carrier obligation to provide service if it is requested. The carrier points to its retention of tariffs applicable to stations on the line.

Finally, DRGW asserts that the line has always been classed and treated as operating railroad property on its own books, by the State of Colorado, and by Pitkin County.

## DISCUSSION AND CONCLUSIONS

DRGW cannot be found to have "abandoned" the line under 43 U.S.C. 912 and 16 U.S.C. 1248(c). That is so because the Commission has never exercised its authority at 49 U.S.C. 10903 to permit the abandonment.

Phillips improperly relies on cases that were decided before the Commission was authorized to regulate the abandonment of railroad lines in 1920.[8] These cases do not apply because Phillips is not claiming that rail service ceased before the Commission was given authority to regulate abandonments.

Phillips also relies on cases where abandonment authority was either obtained or not required prior to the court litigation.[9] Here, abandonment authority is necessary under 49 U.S.C. 10903 and has never been obtained for the Aspen Branch. Thus, these cases do not establish that the Aspen Branch can be abandoned without prior Commission approval.

Phillips cites *Oklahoma City—Ada—Atoka Ry. Co. v. City of Ada*, 182 F.2d 293 (10th Cir.1950). There, the court upheld a trial court's finding that right-of-way reverted to the City of Ada under a statute governing the disposition of land in American Indian

---

5. Exhibit 9 of DRGW's comments filed September 26, 1994.

6. Exhibit 10 of DRGW's comments filed September 26, 1994.

7. Exhibit 8 of DRGW's comments filed September 26, 1994. This exhibit includes two photographs of an abandoned portion below Woody Creek. The exhibit was not sponsored by a witness, but it was accompanied by a map showing the location of the photographs.

8. In this category of cases are: *Northern Pacific Ry. v. Townsend*, 190 U.S. 267 [23 S.Ct. 671, 47 L.Ed. 1044] (1903); *Denver & Rio Grande Ry. v. Mills*, 222 F. 481 (8th Cir.1915); *McClain v. Chicago & N.W. Ry.*, [90 Iowa 646] 57 N.W. 594 (1894); *Missouri Pac. Ry. v. Bradbury*, [106 Mo.

App. 450] 79 S.W. 966 (1904); *New York, N.H. & H. R.R. v. Benedict*, [169 Mass. 262] 47 N.E. 1027 (1897); *Home Real Estate Co. v. Los Angeles Pac. Co.*, [163 Cal. 710] 126 P. 972 (1912); and *Atlanta & Charlotte Air Line Ry. v. City of Easley*, [117 S.C. 494] 109 S.E. 285 (1921) (*Easley*). While the decision in *Easley* was not reached until 1921, the disputed portion of the right-of-way had been used as a public street for 39 years before the Commission was authorized to regulate abandonments.

9. In this category of cases are: *Idaho v. Oregon Short Line R.R.*, 617 F.Supp. 213 (D.Idaho 1985); *Vieux v. East Bay Regional Park Dist.*, 906 F.2d 1330 (9th Cir.1990); and *Marshall v. Chicago & North Western [Northwestern] Transp. Co.*, 826 F.Supp. 1310 (D.Wyo.1992), aff'd 30 [31] F.3d 1028 (10th Cir.1994).

territory when the land ceased to be used for railroad purposes.[10] The right-of-way consisted of a tracked and an untracked portion. 182 F.2d at 295. The court noted that the right-of-way was listed as railroad property in the carrier's annual report to the Commission, but the court approved the reversion anyway, finding (at 295):

> Appellant does not contend that it is using the right of way for railway purposes. Indeed, it has never attempted to use the untracked portion of its right of way for such purposes, and has ceased to use the graded and tracked portion for any purpose since 1935.

We do not view this case as controlling precedent. The issue of the effect of our continued jurisdiction over the right-of-way in the absence of an approved abandonment was not discussed in the decision and does not appear to have been raised by the parties. In any event, the result is an aberration among the overwhelming weight of authority squarely upholding our exclusive and plenary jurisdiction over the abandonment of right-of-way. We view this case as having been wrongly decided and urge the court not to follow it in disposing of the case brought by Phillips.

Phillips also cites *Ocean Shore R.R. v. Doelger*, [179 Cal.App.2d 222] 3 Cal.Rptr. 706 (1960). There, a court upheld a lower court's judgment that railroad right-of-way passed to a reversionary owner on the grounds that it had been abandoned. The court did not rule on a definitive date for the abandonment, but the decision made it clear that it took place at some time after February 1921. The court did not discuss the jurisdiction of the Interstate Commerce Commission or even mention the existence this agency. Moreover, it is not even clear that the railroad was subject to the jurisdiction of the Commission, for it was an intrastate railroad handling traffic subject to the jurisdiction of the California Railroad Commission, which

allowed the carrier to end service during 1920 or 1921. In any event, even if the line was subject to our jurisdiction and the issue of our jurisdiction had been raised, this decision, issued by an intermediate state court whose interpretation of federal law is not final, does not outweigh the considerable authority supporting our exclusive and plenary jurisdiction over the abandonment of rail lines.

The courts have long recognized the exclusive and plenary nature of the Commission's authority over the abandonment of rail lines. For example, in *Chicago & N.W. Transportation Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311 [101 S.Ct. 1124, 67 L.Ed.2d 258] (1981) (*Kalo Brick*), the Supreme Court held that a shipper could not recover common law damages for abandonment of service in a state court because the Commission has exclusive jurisdiction over abandonment of service. Discussing 49 U.S.C. 10903, which governs the Commission's abandonment jurisdiction, the Court stated (450 U.S. at 320 [101 S.Ct. at 1131]):

> This section, we have said, must be "construed to make federal authority effective to the full extent that it has been exerted and with a view of eliminating the evils that Congress intended to abate." [Citation omitted.] Among those evils is "[m]ultiple control in respect of matters affecting [interstate railroad] transportation," because such control, in the judgment of Congress, has proved "detrimental to the public interest." [Citation omitted.]

The Court went on to reason (450 U.S. at 321 [101 S.Ct. at 1132]): "The breadth of the Commission's statutory discretion suggests a Congressional intent to limit interference with the agency's work." [11]

Our jurisdiction over abandonments under 49 U.S.C. 10903 was enacted in order to prevent railroads from discontinuing service at will and thereafter either selling the right-of-way for nonrail use or allowing the right-of-way to pass to reversionary owners. Even

---

**10.** *See* An Act to Provide for the Final Disposition of the Affairs of the Five Civilized Tribes in the Indian Territory, and for Other Purposes, 34 Stat. 137, 142 (April 26, 1906).

**11.** *Accord, Thompson v. Texas Mexican Ry.*, 328 U.S. 134 [66 S.Ct. 937, 90 L.Ed. 1132] (1946); *Hayfield Northern R.R. v. Chicago & N.W. Transportation Co.*, 467 U.S. 622 [104 S.Ct. 2610, 81 L.Ed.2d 527] (1984).

if the Commission were to approve the abandonment of the Aspen Branch, the property could not revert to Phillips if the right-of-way were to be converted for use as a trail and banked for future rail use pursuant to section 8(d) the National Trails System Act, 16 U.S.C. 1247(d). *See Preseault v. I.C.C.*, 494 U.S. 1 [110 S.Ct. 914, 108 L.Ed.2d 1] (1990), upholding the constitutionality of this provision. The clear intent of these statutory provisions was to suspend the rights of reversionary owners under state law as long as the rights-of-way remain subject to our jurisdiction.[12] These statutory provisions reflect a Congressional policy of regulating the termination of service and the dismantling of right-of-way, a policy that would be jeopardized under Phillips' theory that *de facto* abandonment enables a court to authorize transfer of the line under 43 U.S.C. 912.

We find no grounds for concluding that Congress intended to grant reversionary rights recognized under 43 U.S.C. 912 a broader right to vest for track remaining under our jurisdiction than reversionary rights recognized under state law. In the absence of clear legislative history or definitive case law to the contrary, we are most reluctant to come to such a conclusion. Phillips' theory would in effect create a system of dual jurisdiction over abandonments for large segments of the Nation's rail system, under which anyone with a reversionary interest in railroad right-of-way could circumvent our jurisdiction by obtaining an abandonment ruling in a state or federal court. Indeed, under Phillips' theory, railroads could terminate their service obligation without our consent simply by ceasing service and getting a court to declare that the property reverted because service had been abandoned *de facto*.

In light of our finding that the property may not be transferred to Phillips under 43 U.S.C. 912 before we authorize abandonment of the line, we need not resolve the purely factual issue raised by Phillips and referred to us by the court, i.e., whether DRGW ceased to use the right-of-way for rail purposes at least by October 4, 1988. Moreover, it is our view that the court is not able to find a *de facto* abandonment in the absence of Commission permission for the carrier lawfully to abandon service. Thus, we do not reach the issue of whether there was a *de facto* abandonment of the line before October 4, 1988.

On March 10, 1995, Phillips filed a petition to submit additional evidence. Phillips tendered documents designed to show that rail service was in fact terminated before 1988 and is incapable of being revived. Phillips claims that the documents are relevant and were not available when its brief was filed on September 23, 1994.

We will deny admission of these documents. As explained above, we cannot resolve the factual issue with which these documents attempt to deal, namely, whether rail use ceased *de facto* before 1988. The Commission has not approved the abandonment of property, and that is the only legally relevant consideration. Thus, the documents are not relevant.

Moreover, Phillips has not provided good cause for an extension of time to file additional evidence. See 49 CFR 1104.6 and 1104.7. The study prepared for the Colorado Department of Transportation was dated "August 1994." Phillips does not explain why this study was not filed until March 10, 1995. Also tendered is a December 22, 1994 letter to Phillips' attorney by a consultant stating that he reviewed certain photographs taken on June 27, 1984, that allegedly show that there is a landslide covering an 85-foot portion of the track. Phillips provides no explanation of why the consultant's opinion was not procured and submitted earlier.

This decision will not significantly affect either the quality of the human environment or the conservation of energy resources.

*It is ordered:*

---

12. *See e.g., Trustees of the Diocese of Vermont v. Vermont,* [145 Vt. 510], 496 A.2d 151 (Vermont 1985), where the court, citing *Kalo Brick, supra,* dismissed an action to extinguish a railroad easement over a line where actual rail service had ended, finding that such an action could not lie because the Interstate Commerce Commission had not approved abandonment.

1. Phillips' motion to admit additional evidence filed March 10, 1995, is denied.

2. This proceeding is discontinued.

3. This decision is effective on April 18, 1995.

4. A copy of the decision will be served on the parties and on the referring court:

United States District Court

District of Colorado

U.S. Court House

1929 Stout Street

Denver, CO 80294

   Re: No. 93–Z–1461

By the Commission, Chairman McDonald, Vice Chairman Morgan, and Commissioners Simmons and Owen.

Vernon A. Williams

   Secretary

(SEAL)